UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TINA B.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00881-DLP-JRS |
| | ) | |
| ANDREW M. SAUL, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

### O<small>RDER</small>

Plaintiff Tina B. requests judicial review of the denial by the Commissioner of

the Social Security Administration ("Commissioner") of her application for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See*

42 U.S.C. § 405(g). For the reasons set forth below, this Court hereby **AFFIRMS**

the ALJ's decision denying the Plaintiff benefits.

### I.   P<small>ROCEDURAL</small> H<small>ISTORY</small>

On September 14, 2016, Tina protectively filed her application for Title II

DIB. (Dkt. 14-2 at 12, R. 11; Dkt. 14-5 at 2, R. 237). Tina alleged disability resulting

from mixed connective tissue disease, Chiari I malformation, coronary artery

disease, peripheral arterial disease, chronic obstruction pulmonary disease,

fibromyalgia, migraines, and degenerative disc disease in her neck and back. (Dkt.

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

14-6 at 6, R. 262). The Social Security Administration ("SSA") denied Tina's claim initially on March 22, 2017, (Dkt. 14-4 at 2, R. 170), and on reconsideration on July 13, 2017. (Id. at 9, R. 177). On August 28, 2017, Tina filed a request for a hearing, which was granted. (Id. at 17, R. 185).

On January 17, 2019, Administrative Law Judge ("ALJ") Teresa Kroenecke conducted a hearing, where Tina and vocational expert Dewey Franklin appeared in person. (Dkt. 14-2 at 111, R. 110). On March 12, 2019, ALJ Kroenecke issued an unfavorable decision finding that Tina was not disabled. (Id. at 9-22, R. 8-21). On April 16, 2019, Tina appealed the ALJ's decision. (Dkt. 14-4 at 67, R. 235). On February 10, 2020, the Appeals Council denied Tina's request for review, making the ALJ's decision final. (Dkt. 14-2 at 2, R. 1). Tina now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant

numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has

implemented these statutory standards by, in part, prescribing a five-step

sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a).

The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a
> severe impairment or combination of impairments; (3) the
> claimant's impairment meets or equals any impairment listed in
> the regulations as being so severe as to preclude substantial
> gainful activity; (4) the claimant's residual functional capacity
> leaves [her] unable to perform [her] past relevant work; and
> (5) the claimant is unable to perform any other work existing in
> significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation

omitted). An affirmative answer to each step leads either to the next step or, at

steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520;

*Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three,

then she must satisfy step four. Once step four is satisfied, the burden shifts to the

SSA to establish that the claimant is capable of performing work in the national

economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R.

§ 404.1520. (A negative answer at any point, other than step three, terminates the

inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's

residual functional capacity ("RFC") by evaluating "all limitations that arise from

medically determinable impairments, even those that are not severe." *Villano v.*

*Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a

claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01

(7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is

not whether Tina is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and

conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A.  Tina's Relevant Medical History

On April 22, 2016, Tina underwent lower extremity arterial testing at Major Hospital, which demonstrated a mild reduction of blood flow at rest of her right leg that increased to moderate with exertion. (Dkt. 14-7 at 5, R. 362). During the testing, Tina walked on a treadmill for four minutes before complaining of leg pain. (Id. at 7, R. 364). On June 22, 2016, Tina had an evaluation with a vascular specialist, Dr. Douglas Roese. (Id. at 8, R. 365). She reported pain in her calves that had progressed in the last two years to the point that she was unable to walk across her office without discomfort. (Id.). Tina was diagnosed with peripheral vascular disease with progressive claudication (calf pain and cramping). (Id. at 10, R. 367).

On July 27, 2016, Tina followed up with her primary care provider, Nurse Practitioner Jennifer Hardisty. (Dkt. 14-8 at 19, R. 472). She reported constant aching and cramping pain in her legs that was aggravated by movement, standing, walking, or crossing her legs. (Id.). On examination, NP Hardisty noted that Tina had a limping gait. (Id. at 21, R. 474). In follow-up visits on August 22, 2016, October 5, 2016, and November 2, 2016, Tina reported continued pain in her back and legs, and noted that her legs went numb when she raised her arms above her head. (Dkt. 14-8 at 2-18, R. 455-471).

On December 3, 2016, Tina attended a consultative physical examination with Dr. Shuyan Wang at the request of the SSA. (Id. at 125, R. 578). Tina reported that she had recently been diagnosed with a Chiari I malformation[2] that caused her legs to go numb when she raised her arms above her head. (Id.). She also reported claudication in her calves with walking even short distances, such as going from her office to the parking lot and while grocery shopping, and that she could only stand for 30 minutes at a time. (Id.).

On examination, Dr. Wang noted that Tina walked with a normal gait but was relatively slow. (Id. at 126, R. 579). Her right foot was "slightly cooler" than her left foot, but there was no clubbing, cyanosis, venous stasis changes, or pitting edema. (Id.). She had one spot of lumbar tenderness and straight leg raise testing was "limited at 70 degrees bilaterally in the supine position due to posterior legs pain and hips pain." (Id. at 127, R. 580). She was able to walk on both heels, both toes, and perform tandem walking. (Id.). The consulting examiner's medical source statement was limited to a list of diagnoses: mixed connective tissue disease, Chiari malformation, coronary artery disease with a history of myocardial infarction, peripheral artery disease, aortic disease, chronic obstructive pulmonary disease, neck pain and low back pain with degenerative disc disease, and headaches. (Id.).

On December 8, 2016, Tina was evaluated by a neurologist, Dr. Ryan Gleason, after the recent MRI revealed a Chiari I malformation. (Dkt. 14-9 at 2, R.

---

[2] A Chiari I malformation is a condition where brain tissue extends into your skull, with type I occurring as the brain and skull are growing. *Chiari malformation*, https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last visited May 6, 2021).

583). Among the associated symptoms, she described feeling numbness down her arms and legs when she raised her arms above her shoulders. (Id.). Her sensation was diminished in her left hand and leg, and her gait was antalgic related to her low back pain. (Id.).

On February 6, 2017, Tina was admitted to IU Methodist Hospital for a posterior craniectomy and laminectomy for Chiari decompression. (Dkt. 14-9 at 102, R. 683). Surgery was completed, Tina was evaluated for the next two days, and she was released from the hospital on February 9, 2017. (Id.).

On August 8, 2017, Tina underwent a right, middle superficial femoral artery drug-coated angioplasty procedure at Franciscan Health. (Dkt. 14-10 at 79, R. 780). During her follow-up appointment, on November 15, 2017, Tina reported that her symptoms had significantly improved but that she was still experiencing some pain throughout her entire body which she believed was caused by an autoimmune disease, mixed connective tissue disease. (Id.). During the testing, registered Diagnostic Medical Sonographer Jessica Poling noted that Tina had "[n]o obvious swelling or discoloring," and that her legs and feet were warm to the touch. (Id.).

Later that day, Tina also had a follow-up visit with Dr. Carson Turner at the Indiana Heart Physicians Office. During the visit, Tina reported feeling relatively well from a vascular standpoint. She also indicated that she had noticed a significant improvement in her claudication and as a result was able to ambulate without much difficulty. (Dkt. 14-10 at 93, R. 794). Dr. Turner maintained her current medical regimen, and encouraged Tina to stop smoking. (Id.)

Tina had a neurological evaluation at Josephson Wallack Munshower Neurology, PC with Dr. Keith Cushing on April 18, 2018. (Dkt. 14-14 at 51, R. 1171). Dr. Cushing noted that Tina's physical examination was normal and that she had a "casual gait within normal limits." (Id. at 54, R. 1174). Dr. Cushing ordered an MRI of the brain and noted that Tina's symptoms may be the result of her underlying autoimmune disease. (Dkt. 14-14 at 54-55, R. 1174-1175).

On May 16, 2018, Tina had an initial assessment for physical therapy at SportWorks Rehabilitation Center. (Dkt. 14-17 at 21, R. 1396). She was noted to have symptoms consistent with mechanical low back pain that was exacerbated by the Chiari I malformation. (Id.). Objective testing demonstrated reduced flexibility in her back, legs, and core, and those deficits resulted in functional limitations in walking and maintaining prolonged positions in standing or sitting. (Id.). The therapist believed that Tina was a good candidate for continued skilled physical therapy to progress toward established goals of improving flexibility, improving spinal range of motion, improving lower extremity and core strength, and improving functional endurance. (Id.). On June 19, 2018, Tina was discharged for failing to return to therapy. (Id. at 20, R. 1395).

On September 26, 2018, an MRI was taken of Tina's lumbar spine. (Dkt. 14-13 at 8, R. 1030). The radiologist's impressions were stable mild spondylosis, mild lumbar disc bulges, no central canal compromise, and borderline mild bilateral foraminal compromise present at the L4-L5 level. (Id.). On October 10, 2018, a nerve conduction study and electromyography were normal. (Dkt. 14-14 at 68, R. 1188).

By October 19, 2018, Tina had resumed physical therapy, with ATI Physical Therapy, for her back pain, and she attended six sessions. (Dkt. 14-17 at 62, R. 1437). The therapist noted on October 19, 2018 that "[s]ubjectively, patient report[ed] slightly increased function and decreased pain since initiating therapy. Objectively, patient has made small, but significant, gains in thoracic and lumbar [range of motion] and [lower extremity] strength." (Id.). On October 23, 2018, Tina reported feeling better and pretty good. (Id. at 60, R. 1435). She also reported that whereas she could not walk for more than 10 minutes prior to starting therapy, she had been able to complete a 45 minute walk the day before. On December 19, 2018, Tina reported feeling worse, but she had been unable to attend therapy in the past week because of being sick, which caused a flare in her symptoms. (Id. at 51, R. 1426). Her therapist was "unable to assess whether therapy is able to help as consistency in therapy ha[d] not been established." (Id.).

## B. Factual Background

Tina was 47 years old as of her alleged onset date on August 6, 2016. (*See* Dkt. 14-5 at 2, R. 237). She has earned a GED. (Dkt. 14-6 at 7, R. 263). She has past relevant work history in factories in small parts assembly and glass production. (Id. at 8, R. 264).

## C. ALJ Decision

In determining whether Tina qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Tina was not disabled. (Dkt. 14-2 at 9-22, R. 8-21).

At Step One, the ALJ found that Tina had not engaged in substantial gainful activity since the alleged onset date of August 8, 2016. (Id. at 14, R. 13).

At Step Two, the ALJ found that Tina suffered from "the following severe impairments: lumbar degenerative disc disease, history of Chiari malformation status post surgery, migraines, and mixed connective tissue disease/fibromyalgia." (Id. at 15, R. 14 (citation omitted)). The ALJ also found that "COPD/asthma, coronary artery disease status post myocardial infarction, peripheral artery disease status post surgery, hypertension, GERD, chronic kidney disease, vasculitis, . . . obesity," depression, and anxiety were non-severe impairments. (Id.).

At Step Three, the ALJ found that Tina's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, specifically considering Listings 1.04, 11.02, and 14.06, along with SSR 12-2p for Tina's fibromyalgia. (Id. at 16, R. 15 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526)).

After Step Three but before Step Four, the ALJ found that Tina had the RFC to "perform light work as defined in 20 CFR 404.1567(b)," with the following additional limitations:

- no more than occasional stooping, and climbing of ramps and stairs;
- no kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds;
- no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights or dangerous machinery;
- no overhead reaching with the bilateral upper extremities;
- no more than occasional exposure to pulmonary irritants, such as dusts, odors, gases, and fumes;

11

- no more than frequent handling or gross manipulation, or fingering or fine manipulation with the bilateral upper extremities;
- must be allowed to alternate into the sitting position from the standing and/or walking positions every 30-45 minutes for 2-3 minutes while at the work station and allowed to alternate into the standing position from the sitting position every 30-45 minutes for 2-3 minutes while at the work station;
- limited to no more than short, simple, routine instructions;
- able to sustain attention and/or concentration for at least two-hour periods at a time and for eight hours in the workday when limited to short, simple, routine tasks;
- requires set routine and procedures, and few changes during work;
- no fast-paced production work or assembly line work.

(Dkt. 14-2 at 17, R. 16).

At Step Four, relying on the vocational expert's testimony, the ALJ determined that, considering Tina's RFC, she was unable to perform any of her past relevant work as a production machine tender, overnight stocker, and quality control technician. (Id. at 21, R. 20).

At Step Five, relying on the vocational expert's testimony, the ALJ determined that, considering Tina's age, education, work experience, and RFC, she was capable of adjusting to other work with jobs existing in significant numbers in the national economy in representative occupations such as an information clerk, survey clerk, and ticket taker. (Id. at 21-22, R. 20-21). The ALJ concluded that Tina was not disabled. (Id. at 22, R. 21).

## IV.   ANALYSIS

Tina challenges the ALJ's decision concerning the RFC assessment on two grounds. (Dkt. 16 at 4). First, Tina contends that the ALJ's conclusion that she could stand and/or walk for six hours in an eight-hour workday was not supported

by substantial evidence. (Dkt. 16 at 23). Second, Tina challenges the ALJ's credibility assessment. (Id.). The Court will consider each argument below.

## A. Limitations with Standing and Walking

First, Tina argues that the ALJ's RFC finding that Tina could stand and/or walk for six hours in an eight-hour workday was based on selective evidence from her medical records. (Dkt. 16 at 23). In her briefing, Tina has detailed the evidence that she contends conflicts with the ALJ's finding that she could stand and walk for a total of six hours in an eight-hour workday, which includes demonstrated peripheral vascular disease resulting in claudication (calf pain and cramping), an antalgic gait during a neurological examination that appeared to be caused by lower back pain, indications of lower extremity weakness, and Tina's corresponding reports of decreased mobility and inability to sustain prolonged standing and walking. (Dkt. 16 at 23-24).  Becuase of the ALJ's failure to engage with this evidence, Tina maintains that this case should be remanded for further analysis.

In response, the Commissioner maintains that the ALJ's findings were supported by substantial evidence and the ALJ's RFC assessment was appropriate. (Dkt. 19 at 6). The Commissioner notes that the ALJ gave the state agency consultants' opinion, who found Tina capable of performing a range of light work, substantial weight. (Id. at 7). In addition to considering the relevant medical evidence, the Commissioner also argues that the ALJ's implementation of additional limitations, beyond those assessed by the state agency consultants, was supported by the evidence. (Id.). Lastly, the Commissioner contends that the Plaintiff has failed to

direct the Court to any medical opinion suggesting that Tina was more limited with her ability to stand and walk than assessed by the ALJ. (Id. at 8).

In reply, Tina maintains that the ALJ's mere summary of the medical evidence is not a proper substitute for analysis. (Dkt. 20 at 2). Specifically, Tina argues that the ALJ failed to explain how she concluded that Tina could stand and walk for six hours with brief periods of alternating positions. (Id.). Tina contends that without a medical opinion assessing the need for alternative positions, the ALJ made an unsupported medical determination. (Id.).

In determining whether there is substantial evidence to support an RFC, the Court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not address every single piece of evidence that cuts against her decision, she "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ cannot ignore a line of evidence that supports a finding of disability. *Deborah M. v. Saul*, No. 20-2570, 2021 WL 1399281, at *2 (7th Cir. Apr. 14, 2021) (collecting cases); *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

In looking to the record, in March 2016, Nurse Practitioner Hardisty observed Tina walking with a limp, and eventually referred her to Dr. Roese. (Dkt. 14-8 at 29, 38; R. 482, 491). During the June 22, 2016 visit, Dr. Roese advised Tina to stop smoking and encouraged her to start walking and begin an exercise program. (Dkt. 14-7 at 8, R. 365). Dr. Roese explained to Tina that "the pain in her legs [was] not dangerous, and she [would] not damage her legs by attempting to walk." (Dkt. 14-7 at 11, R. 368). During physical therapy in May 2018, Tina's long-term goals were identified, which included her engaging in a consistent walking program in a few months. (Dkt. 14-17 at 22, R. 1397). By October 2018, Tina reported "feeling better" and reported being able to walk for 45 minutes without her back bothering her after she previously could not walk for 10 minutes without pain. (Dkt. 14-17 at 60, R. 1435). From October 2018 through December 2018, however, Tina's progress was stunted due to inconsistent attendance with therapy. (Id. at 51, R. 1426).

The evidence that Tina suggest was ignored and demonstrates her disability was actually considered by the SSA medical consultants. The most recent review by state agency physician J. Sands specifically considered the evidence of Tina's leg cramping with walking only a few yards (Dkt. 14-3 at 27-28, R. 165-66); Dr. Wang's findings during the consultative exam noted that Tina had reduced blood flow into her right foot (Dkt. 14-8 at 128, R. 581); and Dr. Gleason's findings on December 8, 2016 noted that Tina's most recent neurological examination revealed an antalgic gait and slightly decreased muscle strength in her lower extremities. (Dkt. 14-9 at 4, R. 585). The state agency physicians' review also detailed Dr. Wang's findings that

15

Tina had a normal but slow gait; could heel, toe, and tandem walk; and could stand on either leg alone. (Dkt. 14-3 at 27, R.165; *see* Dkt. 14-8 at 128, R. 581). Tina's claim that the ALJ's failure to mention each of these pieces of evidence is reversible error rings hollow, because the state agency physicians reviewed and relied on this evidence when making their RFC recommendation, and the ALJ in turn relied on those opinions when crafting Tina's ultimate RFC.

In explanation of her RFC finding, the ALJ analyzed the medical evidence, weighed the medical opinions in the record, reviewed Tina's activities of daily living and considered the hearing testimony. As the record demonstrates, the state agency reviewing consultants explicitly considered Tina's peripheral vascular/arterial disease to be one of her severe, medically determinable impairments that supported their assessment of her RFC. (*See* Dkt. 14-3 at 27-28, R. 165-66). Id. at 23, R. 161). Furthermore, the updated record following the consultants' reviews demonstrated significant improvement with Tina's peripheral vascular disease. Following arterial angioplasty, her objective blood flow testing was normal. (Dkt. 14-10 at 70, R. 771). She reported "feeling relatively well from a vascular standpoint." (Dkt. 14-10 at 93, R. 794). Following the procedure, Tina "noted a significant improvement in her claudication" and she was "able to ambulate without much difficulty related to her claudication." (Id.). While the ALJ did not detail the historical evidence of Tina's peripheral vascular disease considered by the state agency consultants, the ALJ demonstrated that she considered the impairment by noting that the peripheral

artery disease impairment was no longer severe "status post surgery." (Dkt. 14-2 at 15, R. 14).

During her hearing, Tina identified her lower back pain and her memory issues as her biggest barriers to working, which was consistent with the medical record and the focal point of the ALJ's opinion. (Dkt. 14-2 at 18, R. 17). The ALJ summarized Tina's treatment notes which reflected her consistent complaints of musculoskeletal pain; identified MRI documents that reflected Tina's mild degenerative disc disease in her lumbar spine; summarized various physical exams that reported a normal gait assessment for Tina; and considered physical therapy treatment notes that reported Tina's inconsistent attendance was resulting in slow progress toward her long-term treatment goals. (Dkt. 14-2 at 18-19, R. 17-18). Consistent with the definition of light work, the ALJ also noted the state agency reviewing consultants' assessments that found Tina could stand and/or walk with normal breaks for a total of "[a]bout 6 hours in an 8-hour workday." (*See, e.g.*, Dkt. 14-3 at 26, R. 164). Relying on the medical evidence, hearing testimony, and the state agency physicians' opinions, the ALJ determined that Tina needed additional limitations, including limitations about reaching overhead and alternating her standing and walking positions. (Dkt. 14-2 at 20, R. 19).

Tina next contends that the ALJ's inclusion of a limitation that she would need to "alternate into the sitting position from the standing and/or walking positions every 30-45 minutes for 2-3 minutes while at the work station and allow to alternate into the standing position from the sitting position every 30-45 minutes

17

for 2-3 minutes while at the work station" was improper and not based on any medical opinion in the record. (Dkt. 20 at 2-3; Dkt. 14-2 at 17, R. 16). The ALJ notes that she included this limitation due to medical findings, physical therapy notes, and the claimant's treatment history. (Dkt. 14-2 at 19, R. 18). Moreover, at the disability hearing, Tina testified that she would need to alternate positions every 30-45 minutes. (Dkt. 14-2 at 124, R. 123).

While the Plaintiff highlights several subjective complaints of pain and noted compromises with her gait due to low back pain, she fails to direct the Court to any medical source that assessed that Tina was more functionally limited than the ALJ's physical RFC finding. The Seventh Circuit has stated that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice*, 384 F.3d at 370). Here, the ALJ's RFC finding went beyond the state agency consultants' assessments from 2016 by adding restrictions based on the updated record. Following her Chiari I decompression surgery in February 2017, Tina continued to report numbness in her legs when she raised her arms above her head. (Dkt. 14-4 at 51, R. 1171). In response, the ALJ's RFC assessment limited Tina to no overhead reaching with her bilateral upper extremities.

The ALJ considered the relevant medical evidence related to Tina's back and leg issues and difficulties with standing and walking, which included an evaluation of the state agency physicians' opinions that considered all relevant medical evidence as well. The ALJ assigned additional functional limitations in the RFC

beyond those assessed by the state agency physicians after receiving additional evidence at the hearing level. As such, the ALJ's RFC is supported by substantial evidence and affirmed.

### B. Subjective Symptom Evaluation

Second, Tina argues that the ALJ's application of Social Security Ruling ("SSR") 16-3p when considering Tina's subjective symptoms complaints was erroneous. (Dkt. 16 at 26). Tina contends that the ALJ's analysis of her subjective symptoms was legally insufficient and warrants remand because the ALJ failed to address objective evidence that supported Tina's statements, discuss any of the "requirements of SSR 16-3p," or provide an accurate and logical bridge between the evidence and her result. (Dkt. 16 at 28-29). Tina maintains that the ALJ's mere summary of the medical evidence is not analysis sufficient to allow meaningful review, and that "by failing to even acknowledge serious symptoms the ALJ has skirted her duties to consider all the evidence." (Id. at 29).

The Commissioner argues that the ALJ is not required to discuss every factor listed in the ruling and her credibility determination must be upheld unless patently wrong. (Dkt. 19 at 8-9). The Commissioner also asserts that Tina's entire argument is simply a recitation of applicable legal authority and that the Court should consider this argument waived. (Id. at 9). The Court agrees.

Tina has not applied the facts of her case to the legal authority she cites—in fact, this section contains not a single reference to the record. (See Dkt. 16 at 26-30). The Seventh Circuit has held in a social security disability context that

"[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)). While Tina lists the factors that an ALJ should consider according to SSR 16-3p, and contends that the ALJ did not comply with that SSR, Tina fails to apply any of the factors to the evidence of her case to demonstrate that a more robust discussion of the factors would have supported a different outcome, and the Court declines to manufacture that discussion for the Plaintiff. Because this credibility argument is perfunctory and undeveloped, the Court deems it waived.

Moreover, given the adequate reasons supported by the record for discounting Tina's allegations of limitations, as noted above, the Court declines to disturb the ALJ's credibility finding and denies remand on this issue. *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

## V.   CONCLUSION

For the reasons detailed herein, this Court **AFFIRMS** the ALJ's decision denying Plaintiff benefits. Final judgment will issue accordingly.

So ORDERED.

Date: 5/11/2021

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.